UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22708-Cv-Martinez
    (05-60203-Cr-Martinez)
MAGISTRATE JUDGE P. A. WHITE

EDMOND GRIGORIAN,                    :

          Movant,                    :

                                          REPORT OF MAGISTRATE
v.                                   :    JUDGE FOLLOWING
                                          EVIDENTIARY HEARING
UNITED STATES OF AMERICA,            :

          Respondent.               :

_____

Introduction

     This matter is before the Court on the movant's motion to
vacate pursuant to 28 U.S.C. §2255, attacking his conviction and
sentence for conspiracy to commit mail and wire fraud, mail fraud,
and wire fraud, entered following a jury verdict in case no. 05-Cr-
60203-Martinez.

     The Court has reviewed the motion (Cv-DE#1), memorandum of law
(Cv-DE#2), the government's response thereto (Cv-DE#9), the reply
(Cv-DE#12), the Pre-sentence Investigation Report (PSI), and all
pertinent portions of the underlying criminal file.

Claims

     Construing the movant's arguments liberally as afforded pro se
litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the
movant appears to raise the following claims in his §2255 motion:

     1.   The movant was denied effective assistance of
          counsel when his attorney failed to advise him as to all
          the facts and law relevant to his decision to plead not

guilty and proceed to trial. The movant asserts that had he been fully advised, there is a reasonable probability that he would have pleaded guilty and not proceeded to trial. (Cv-DE#1:4).

2.   The movant was denied effective assistance of counsel when his attorney failed to object to the court's victim and loss findings at sentencing, which violated his Eighth Amendment right. (Cv-DE#1:5).

After review of the record, it became apparent that an evidentiary hearing was necessary at least with regard to **claim one**, as listed above. Ruben Garcia, Esquire was appointed to represent the movant and an evidentiary hearing was held on June 15, 2010.

<u>Factual History</u>

Starting in the Fall of 2003, American Entertainment Distributors, Inc. (AED), sold DVD vending machines "business opportunities" to consumers throughout the United States from an office located in Hollywood, Florida. During most of its existence, AED's "customer service" employees and "locators" worked for a sister company called Universal Technical Support (UTS), which was run by the same people and located in North Miami Beach, Florida. AED was shut down on September 30, 2004, when U.S. Postal Inspection Service (USPIS) executed a search warrant at the same time the Federal Trade Commission (FTC) obtained a court order that closed the business and froze its assets.

AED advertised the DVD vending machine business opportunity through television commercials, internet advertising, newspaper advertising, and unsolicited faxes sent through a process known as

2

"fax blasting." AED claimed vending machines would be a more convenient way for consumers to rent movies and video games than going to a video store. For approximately $28,000 to $40,000 per machine, AED promised to deliver to the purchaser one "Box Office Express" vending machine, place the machine in high-traffic location and provide customer service.

AED's advertisements provided a toll-free telephone number for prospective purchasers to call. Prospective purchasers who then called AED were initially connected to a "fronter," who used a "fronting" script to describe the business opportunity and screened out prospective purchasers who did not have the necessary funds available. AED then sent interested prospective purchasers by Federal Express a promotional packet that contained a glossy brochure and other sales material.

Usually after receiving the promotional packet, interested prospective purchasers spoke by telephone to an AED "closer." The closer used a "closing" script to describe the business opportunities and tried to close the sale by getting the prospective purchaser to deposit the necessary funds with AED. The AED sales representatives encouraged prospective purchasers, before making a decision, to call certain "references," who were characterized by the sales representatives as prior AED purchasers. If the closer was unable to finalize a sale, a "bring back from the dead," or "BFD" salesman, sometimes called the prospective purchaser at a later time to try to bring the deal "back from the dead." AED's sales representatives, references, advertisements, internet website, and written sales materials provided numerous material representations and concealed material facts to entice consumers to invest, as charged in the Indictment.

More than 400 consumers across the United States were

defrauded of approximately $19.5 million dollars as a result of this fraud.

<u>Procedural History</u>

The procedural history of the underlying criminal case reveals that on August 11, 2005, the grand jury returned an indictment charging the movant with conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §1349 (Count 1); two counts of mail fraud, in violation of 18 U.S.C. §1341 (Counts 4,5); and three counts of wire fraud, in violation 18 U.S.C. §1343 (Counts 14,15,24). (Cr-DE#3).

On October 10, 2006, the movant proceeded to trial (Cr-DE#240), wherein he was found guilty as charged. (Cr-DE#264).

A PSI was prepared in anticipation of sentencing wherein the probation officer determined the movant's base offense level was 7. (PSI¶41). However, because the loss was more than $2,500,000, but not more than $7,000,000, the offense level was increased by 18 levels. (PSI¶42). Moreover, because the offense involved 50 or more victims, the offense was increased by an additional four levels. (PSI¶43). The total offense level was 29. (PSI¶50). The probation officer further determined the movant had one criminal history point. (PSI¶60). Based on a total offense level of 29 and a criminal history category of I, the guideline imprisonment range was 87 to 108 months. (PSI¶99).

On January 4, 2007, the movant proceeded to sentencing wherein the district court further found the movant had obstructed justice by falsely testifying during trial, thus increasing his base offense by two levels. (Cv-DE#9,Ex.5:2-9,21-22). Ultimately, the court sentenced him to 108 months as to all counts to be served

concurrently, followed by 3 years of supervised release and $600 special assessment. (Cr-DE#321). The Clerk entered judgment on January 8, 2007. (Cr-DE#325). A timely notice of appeal was filed. (Cr-DE#338). On August 8, 2008, the Eleventh Circuit, <u>per curiam</u>, affirmed the movant's sentence and conviction. (Cr-DE#602). It appears no petition for writ of certiorari was filed with the United States Supreme Court. The judgment of conviction in the underlying criminal case became final at the latest on November 8, 2008, ninety days after the judgement was issued on direct appeal,[1] when time expired for seeking certiorari review with the Supreme Court. This timely motion to vacate ensued. (Cv-DE#1).

<u>Evidentiary Hearing Claim</u>

In **claim one**, the movant asserts that counsel was ineffective for failing to advise him as to all the facts and law relevant to his decision to plead not guilty and proceed to trial. (Cv-DE#1:4). Specifically, the movant argues had counsel properly advised him regarding the immigration consequences he faced, he would have pleaded guilty instead of proceeding to trial.

The claim was not conclusively refuted by the record and warranted further evidentiary findings. At the June 15, 2010 evidentiary hearing, testimony was taken from the movant, his immigration attorney and his defense counsel from the underlying criminal proceedings.

---

[1]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. <u>Sup.Ct.R</u>. 13; <u>see</u> <u>also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

*Testimony: Movant*

The movant was advised by his attorney, Mr. Rubio, that if he pleaded guilty, he was subject to deportation. According to the movant, counsel, in essence, informed him that if he signed a plea agreement, he would be placed on an airplane and sent to Iran, a country that the movant had not been to since he was seven years old. Therefore, counsel advised the movant to maintain his innocence and proceed to trial, which the movant did. However, when the movant demonstrated concerns regarding the outcome of trial, counsel advised he could always win on appeal.

Notwithstanding, the movant testified that had he known immigration procedures existed and that he could hire the assistance of an immigration attorney, he would have pleaded guilty instead of proceeding to trial.

Prior to trial, upon advise from Mr. Rubio, the movant contacted Linda Osberg-Braun, an immigration attorney. After briefly speaking with the movant on the matter, Ms. Osberg-Braun offered her assistance, spoke to Mr. Rubio once, but apparently defense counsel rejected any help from her.

In November, after the movant was convicted, Ms. Osberg-Braun visited him at the Federal Detention Center ("FDC") to explain the procedures that would occur in relation to his immigration case, including an opportunity to appear before the immigration court and present his case during a removal hearing. She felt confident in her ability to clarify the movant's immigration case and resolve the matter in light of his political asylum status in the United States, the length of time he has lived in the United States and that Iran was the country of origin.

Although during cross-examination, the movant admitted he was guilty of the crime, after further questioning it was revealed that despite his belief that he is innocent, as part of his change of plea hearing, he would appear before the court and under oath, plead guilty.

*Testimony: Immigration Lawyer*

The movant approached Ms. Osberg-Braun with legal questions pertaining to both his criminal and immigration issues. Counsel informed the movant that she previously was a public defender and from her experience, 80 to 90 percent of the cases that proceeded to trial resulted in a conviction. She also advised him not to consult with her regarding the merits of her case, but cautioned him that the chances are very strong that he will be convicted and therefore, he should think about pleading guilty. She then provided him with her card and told him to have his attorney contact her and she would make herself available if necessary. The movant was further advised that sometimes the consequences of an immigration matter are worse than those in relation to a criminal case.

Eventually, during the jury selection stage of the proceedings, Ms. Osberg-Braun and Mr. Rubio communicated. She advised defense counsel that it was in the movant's best interest if he avoided an aggravated felony conviction.

In November, after the movant's conviction, Ms. Osberg-Braun visited him at the FDC and explained to him that because he was convicted of an aggravated felony, he was removable from the United States and he was no longer eligible for political asylum. However, he was eligible for withholding of removal, which if he wins, although his green card is confiscated, he is nonetheless prevented

from being physically deported. Moreover, if he is successful, deportation to Iran is no longer an option, however the United States may try to find a third country that would accept him, but most likely, he would stay in the United States with work authorization.

*Testimony: Defense Counsel*

Mr. Frank Rubio, a seasoned attorney, began representing the movant shortly after he was indicted, having no role prior to the filing thereof. Although the government never made any written plea agreement offers subsequent to Mr. Rubio's representation of the movant, counsel nevertheless negotiated with the government in hopes of reducing the charges to misdemeanors, thus avoiding an aggravated felony conviction and the possibility of deportation. Despite counsel's efforts, the government refused.

Since Mr. Rubio was aware of the potential immigration consequences the movant faced and because he was not an immigration expert, he advised the movant to seek advice from an immigration attorney, which he did. Eventually, Mr. Rubio and Ms. Osberg-Braun communicated and she advised him that the movant would need to plead to an offense that did not result in an aggravated felony, because otherwise, he was subject to deportation. Despite the movant's testimony, Mr. Rubio never declined Ms. Osberg-Braun's help.

Moreover, counsel testified that throughout the underlying criminal proceedings, the movant always maintained his innocence and indicated he wanted to proceed to trial. Contrary to the movant's allegations, Mr. Rubio never insisted for the movant to maintain his innocence, and in fact, he advised the movant he had

less than a two percent chance of winning based upon the government's video recording of his actions in the case.

*The Law: Benefits of Pleading Guilty v. Trial*

The Sixth Amendment right to counsel includes the right to competent advice regarding the choice to accept a plea bargain or go to trial. <u>Turner v. Tennessee</u>, 664 F.Supp. 1113, 1120 (M.D. Tenn.), <u>aff'd</u>, 858 F.2d 1201 (6th Cir. 1988), <u>vacated on other grounds</u>, 492 U.S. 902 (1989), <u>reinstated</u>, 726 F.Supp. 1113 (M.D. Tenn. 1989), <u>aff'd</u>, 940 F.2d 1000 (1991), <u>cert.denied</u>, 502 U.S. 1050 (1992); <u>accord</u>, <u>Johnson v. Duckworth</u>, 793 F.2d 898, 900-02 (7th Cir.), <u>cert.denied</u>, 479 U.S. 937 (1986)(criminal defendant has right to effective assistance of counsel in deciding whether to accept or reject proposed plea agreement); <u>United State ex rel. Caruso v. Zelinsky</u>, 689 F.2d 435, 438 (3rd Cir. 1982)(decision to reject plea agreement is critical stage at which right to effective assistance attaches); <u>Beckham v. Wainwright</u>, 639 F.2d 262, 267 (5th Cir. 1991)(incompetent advice to withdraw negotiated plea and proceed to trial violated defendant's Sixth Amendment right).

A lawyer is obligated to keep the client informed of important developments, including any plea agreement offered by the government. Counsel's failure to do so is ineffective assistance. <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991), <u>citing</u>, <u>Johnson v. Duckworth</u>, <u>supra</u>; <u>see also</u>, <u>Pham v. United States</u>, 317 F.3d 178, 182-83 (2d Cir. 2003)(defense counsel's failure to inform defendant of government's "global plea offer" constituted ineffective assistance); <u>Jones v. Wood</u>, 114 F.3d 1002, 1012 (9th Cir. 1997)(failure to inform client of plea bargain may have risen to the level of ineffective assistance of counsel if petitioner had shown prejudice); <u>United States v. Rodriquez</u>, 929 F.2d 747, 752

(1st Cir. 1991)("Ordinarily, counsel's failure to inform client of plea agreement constitutes ineffective assistance of counsel."); United States v. Zelinsky, 689 F.2d 435, 438 (3rd Cir. 1982)("It would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards.").

In reviewing ineffective assistance of counsel with respect to guilty pleas, the United States Supreme Court has applied the "objective standard of reasonableness" by considering whether counsel's representation was "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)(applying Strickland requirements to review for ineffective assistance of counsel with respect to guilty pleas (citations omitted)). With regard to the prejudice prong, the Court held that the inquiry focused on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. If it is found that counsel failed to inform his client of the government's plea offer, the remedy is for the District Court to ensure that the government reinstates its original plea offer. United States v. Baylock, 29 F.3d 1458, 1468 (9th Cir. 1994).

*Analysis:*

After careful consideration of the testimony of the movant in the context of this case and close observation of his demeanor, as well as careful attention to and review of the testimony of defense counsel and the immigration attorney at the evidentiary hearing, and, taking into account the respective interests of the parties in the outcome of this proceeding, the undersigned finds credible Mr. Rubio's testimony that he advised the movant to seek the help of an

10

immigration attorney with respect to the immigration consequences he faced as a result of the charges against him. This court also credits counsel's testimony that he cautioned the movant of the benefits and the ramifications of pleading guilty and proceeding to trial, and that the movant maintained his innocence and was adamant about not pleading guilty.

Finally, the court finds that the movant knew the benefits of pleading guilty and understood that if he proceeded to trial and was convicted, he faced deportation. The court is not persuaded and finds disingenuous the movant's testimony that had he been properly advised regarding his immigration matter, he would have pleaded guilty and not proceeded to trial, in order to obtain a lower sentence and acceptance of responsibility. Thus, the movant has failed to make a showing in this collateral proceeding that he was misadvised or prevented from pleading guilty as charged. Moreover, this court finds the movant's after the fact testimony concerning his desire to plead guilty, without any objective evidence in support thereof, is insufficient to establish that he was prejudiced by counsel's alleged advice. See United States v. Diaz, supra. Thus, the movant has failed to establish deficient performance or prejudice pursuant to Strickland v. Washington, 466 U.S. 668.

To the extent the movant argues that the recent Supreme Court case, Padilla v. Kentucky, 130 S.Ct. 1473 (2010) is applicable to his case, this claim is without merit. Specifically, the movant argues that in light of the severity of deportation and the reality that immigration consequences of criminal convictions are inextricably linked to criminal proceedings, the Sixth Amendment requires defense counsel to provide competent advice to a non-citizen defendant regarding the immigration consequences of a

11

guilty plea and absent such advice, a non-citizen may raise the claim of ineffective assistance of counsel.

Despite the movant's contentions, the facts of <u>Padilla</u> are in direct contrast with the movant's case. In <u>Padilla</u>, resident alien Jose Padilla claimed that his defense counsel advised him that if he pleaded guilty to a marijuana trafficking offense in a Kentucky state court, he was not subject to deportation. <u>See</u> <u>Padilla</u>, <u>supra</u>. Specifically, Padilla claims "that his counsel not only failed to advise him of this consequence prior to his entering the plea, but also told him that he 'did not have to worry about immigration status since he had been in the country so long.' <u>Padilla</u> 130 at 1478. Padilla then pleaded guilty, relying on counsel's erroneous advice. <u>Id.</u> Padilla sought to overturn his conviction based on ineffective assistance of counsel. <u>Id.</u> The Supreme Court agreed with Padilla, that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation. <u>Id.</u> In conclusion, the Court stated that advice regarding deportation "is not categorically removed from the ambit of the Sixth Amendment right to counsel." <u>Id.</u> at 1482.

Although the movant's claim also deals with deportation issues, the details of his case are completely different from those in <u>Padilla</u>. Unlike Padilla's lawyer, the movant's defense counsel informed the movant, prior to proceeding to trial, that he faced immigration issues as a result of the charges against him and that he should seek advice from an immigration attorney, which he did. Defense counsel even went so far as to request the government to reduce the charges to misdemeanors in hopes of eliminating the movant's exposure to deportation. Moreover, the movant's testimony makes it unequivocally clear that both his defense attorney and his

12

immigration attorney informed him that he faced deportation whether he pleaded guilty or was convicted at trial. Likewise, Mr. Rubio's testimony made it clear that the government never even offered a written plea agreement post-indictment, thus even if the movant wanted to plead guilty pursuant to a plea agreement, the option was not available. To the extent the movant argues he would have thrown himself at the mercy of the court and pleaded guilty straight to the indictment, this claim lacks credibility as it was evident from the evidentiary hearing, that the movant maintained his innocence and wanted to proceed to trial.

Under these circumstances, the movant cannot establish either deficient performance or prejudice, pursuant to <u>Strickland</u>, <u>supra</u>.

<u>Remaining Claim</u>

As will be demonstrated in more detail <u>infra</u>, the movant is not entitled to vacatur on any of the claims presented.[2] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner a fundamentally fair trial and due process of law. The movant therefore is not entitled to habeas corpus relief. See <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9th Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single

---

[2]Briefly, the evidence against the movant was more than sufficient to support his conviction. The movant has not shown that the result of the trial, appeal, or sentencing would have been affected had counsel proceeded differently. In other words, no deficient performance or prejudice pursuant to <u>Strickland</u> has been established arising from any of the claims raised in this collateral proceedings, nor has a denial of due process been demonstrated. To the contrary, it is clear after independent review of the record that the movant received a fair trial, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

To the extent the movant challenges counsel's effectiveness, this claim is without merit. Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to the movant. See Massaro v. United States, 538 U.S. 500, 505 (2003). To prevail on a claim of ineffective assistance, a movant must demonstrate both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant. Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001) ; Strickland v. Washington, 466 U.S. 668 (1984). Moreover, a habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, ____ U.S. ____, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). In deciding whether counsel's performance was deficient, judicial scrutiny is "highly deferential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" Id. at 1314 (quoting Strickland v. Washington, 466 U.S. at 689-90.

When assessing a lawyer's performance, "[C]ourts must indulge

the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11th Cir.), cert. denied, 537 U.S. 812 (2002), quoting, Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

    The Eleventh Circuit will not "second-guess counsel's strategy." Chandler, 218 F.3d at 1314, n.14. Strategic choices, even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others--whether or not he investigated those other defenses--is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." Chandler, 218 F.3d at 1318 (quoting Strickland, 466 U.S. at 690-91).

    The courts "are not interested in grading lawyers' performances;" but rather, "are interested in whether the

15

adversarial process at trial . . . worked adequately." <u>Rogers v.</u>
<u>Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)(quotation marks omitted).
To be unreasonable, the performance must be such that "no competent
counsel would have taken the action that [the petitioner's] counsel
did take." <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir.
2001)(emphasis omitted). In other words, "[e]ven if many reasonable
lawyers would not have done as defense counsel did at trial, no
relief can be granted on ineffectiveness grounds unless it is shown
that no reasonable lawyer, in the circumstances, would have done
so." <u>Rogers v. Zant</u>, 13 F.3d at 386.

Under the second prong of the test set forth in <u>Strickland</u>,
the movant can be said to have been prejudiced by counsel's
performance only if there was "a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding
would have been different. A reasonable probability is probability
sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466
U.S. at 694. Rather, the movant must demonstrate that "there is a
reasonable probability that, absent [counsel's] errors, the jury
would have had a reasonable doubt regarding [his] guilt." <u>Blackburn</u>
<u>v. Foltz</u>, 828 F.2d 1177, 1186 (6th Cir. 1987), <u>cert. den'd</u>, 485
U.S. 970 (1988), <u>see also</u>, <u>Montgomery v. Petersen</u>, 846 F.2d 407,
416 (7th Cir. 1988).

However, it is well-settled that tactical or strategic choices
by counsel cannot support a collateral claim of ineffective
assistance. <u>United States v. Costa</u>, 691 F.2d 1358 (11th Cir.
1982); <u>Coco v. United States</u>, 569 F.2d 367 (5th Cir. 1978). Even if
such a decision in retrospect appears incorrect, it can constitute
ineffective assistance only "if it was so patently unreasonable
that no attorney would have chosen it," <u>Adams v. Wainwright</u>, 709
F.2d 1443, 1445 (11th Cir.), <u>cert. denied</u>, 464 U.S. 1663 (1984), or

16

if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986).

Decisions whether to call a particular witness or cross-examine certain witnesses are generally questions of trial strategy. <u>See</u> <u>United States v. Costa</u>, 691 F.2d 1358 (11th Cir. 1982). However, where counsel failed to investigate and interview promising witnesses, and therefore "ha[s] no reason to believe they would not be valuable in securing [defendant's] release," counsel's inaction constitutes negligence, not trial strategy. <u>Workman v. Tate</u>, 957 F.2d 1339, 1345 (6th Cir. 1992)(<u>quoting</u> <u>United States ex rel. Cosey v. Wolff</u>, 727 F.2d 656, 658 n.3 (7th Cir. 1984)). Nevertheless, strategic choices after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. <u>Strickland v. Washington</u>, 466 U.S. at 690-91.

Finally, an ineffective assistance of appellate counsel claim is considered under the same two-part test announced in <u>Strickland</u>, 466 U.S. 668, previously discussed <u>infra</u>. <u>Milligan v. United States</u>, 213 Fed. Appx. 964 (11th Cir. 2007).

In **claim two**, the movant asserts he was denied effective assistance of counsel when his attorney failed to object to the court's victim and loss findings at sentencing, which violated his Eighth Amendment right. (Cv-DE#1:5).

According to the movant, the district court erred when it determined that over 50 victims were involved in the offense and that the loss amount was over $1,000,000, therefore the sentencing enhancements he received as a result thereof should be removed and he should be re-sentenced accordingly. (Cv-DE#2:8).

Moreover, he argues counsel failed to object to the district court errors. (Cv-DE#:9). Specifically, he asserts had defense and appellate counsels researched, investigated and reviewed the movant's entitlements and Apprendi[3] defense strategies, the inaccurate information regarding the number of victims and loss amount would not have been used in his sentencing calculations. (Id.).

Moreover, the movant argues he should be re-sentenced in light of United States v. Booker, 543 U.S. 220 (2005), which was decided subsequent to his sentencing hearing.

To the extent the movant raises a substantive challenge as to the district court's determination of the victim and loss amount, this claim is procedurally barred. Because the claim was not raised on direct appeal, it is procedurally barred from review in this collateral proceeding unless the movant can show cause for the default and actual prejudice, Wainwright v. Sykes, 433 U.S. 72 (1977), or a fundamental miscarriage of justice, Engle v. Isaac, 456 U.S. 107 (1982). Constitutionally ineffective assistance of counsel can constitute cause. See Holladay v. Haley, 209 F.3d 1243, 1253 (11th Cir. 2000), citing, Hollis v. Davis, 941 F.2d 1471, 1476 (11th Cir.1991), citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); see also, United States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986).

---

[3]Apprendi v. New Jersey, 530 U.S. 466 (2000).

18

The movant, in this collateral proceeding, neither shows cause for failing to raise the issues on direct appeal nor does he show any actual prejudice as a result therefrom. Accordingly, the movant's claim is without merit and as such, it is are barred from review.

To the extent the movant raises a substantive Eighth Amendment challenge, this claim is also procedurally defaulted as he failed to raise on direct appeal and has not attempted to meet the cause and prejudice standard for failing to raise this claim.

Moreover, to violate the Eighth Amendment, "a sentence within the limits set by a valid statute . . . [must be] so grossly out of proportion to the severity of the crime as to shock our sense of justice." United States v. Estrada-Plata, 57 F.3d 757, 762-63 (9th Cir. 1995)(court rejected defendant's argument that application of U.S.S.G. §2L1.2(b)(2), which requires a 16-level upward adjustment for immigration defendants convicted of aggravated felonies, resulted in cruel and unusual punishment, and denied him due process by depriving the district court of its discretion to consider the nature of his offenses), citing, United States v. Cupa-Guillen, 34 F.3d 860, 864-65 (9th Cir. 1994)(upheld a 100-month sentence for a §1326(b) defendant with two prior aggravated drug felonies); see also Solem v. Helm, 463 U.S. 277 (1983); See also United States v. Cardenas-Alvarez, 987 F.2d 1129, 1134 (5th Cir. 1993). In this case, no showing has been made that the sentence was disproportionate to the offense of conviction. To the contrary, the court noted it had considered the §3553 factors in fashioning the movant's sentence, as well as, the severity of the offense, which included the loss of millions of dollars from more than 50 victims.

In non-capital cases, the Eighth Amendment contains only a narrow proportionality principle because Congress is entitled to great deference in determining the types and limits of punishments. United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005), citing, Solem v. Helm, 463 U.S. 277, 290 (1983). Typically courts consider three elements in analyzing a proportionality argument: (1) the gravity of the offense and the harshness of the sentence; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005); United States v. Brant, 62 F.3d 367, 368 (11th Cir. 1995).

In this case, the movant has not made a threshold showing that his sentence constitutes cruel and unusual punishment. Contrary to his arguments, the movant's sentence was reasonable in proportion to the offense of conviction given the loss to the victims, the entirety of the scheme and the fact that the sentence fell within the guidelines and statutory ranges. Thus, there was no violation of the Eighth Amendment. Consequently, any argument in this regard must fail.

To the extent the movant argues his counsel was ineffective for failing to object to the victim and loss amount calculations, this claim is belied by the record. Contrarily, defense counsel objected to the calculations both in writing by way of objections to the PSI and orally at sentencing by citing facts, case law and making various arguments. (See Cv-DEs#9,Ex.4 & Ex.5:9-10).

Moreover, to the extent the movant argues trial counsel and appellate counsel failed to "research, investigate and review" the objections, this claim is bare and conclusory. The movant has made

no showing to support this claim. He fails to provide any facts or law upon which he is entitled to relief on this claim. Such a bare and conclusory allegation, unsupported by the record, is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962). Consequently, no deficient performance or prejudice has been demonstrated stemming from counsel's or appellate counsel's representation. <u>See</u> <u>Strickland</u>, 466 U.S. 668 (1984).

To the extent the movant attempts to raise an <u>Apprendi</u> claim that the court's victim and loss findings were improperly used to increase his sentencing guidelines range, this claim is procedurally barred as the movant failed to raise it on direct appeal and he has failed to meet the cause and prejudice standard for failing to previously raise the claim.

Moreover, this claim is meritless because the movant's sentence was not enhanced beyond the statutory maximum prescribed by law and therefore <u>Apprendi</u> does not apply. Case law holds that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). Ultimately, the movant was convicted of one count of conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §1349; two counts of mail fraud, in violation of 18 U.S.C. §1341 and three counts of wire fraud, in violation of 18 U.S.C. §1343; all which had statutory maximum sentences of 20 years imprisonment. (PSI¶98). The movant was sentenced to 108 months imprisonment, which equates to 9 years, a sentence well below the statutory maximum.

To the extent the movant asserts he is entitled to re-

sentencing in light of <u>Booker</u>, <u>supra</u>, this claim is without merit as he was sentenced in January 2007; two years after <u>Booker</u> was decided.

<u>Conclusion</u>

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 18th day of June, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Ruben Garcia, Esq.
     1209 S.E. Third Avenue
     Ft. Lauderdale, FL 33316
     Phone: 954-462-4600
     Fax: 954-462-0828

     Edmond Grigorian, <u>Pro Se</u>
     Reg. No. 64440-004
     Moshannon Valley Correctional Center
     555 I Cornell Drive
     Philipsburg, PA 16866-0798

     Anne Ruth Schultz, AUSA
     United States Attorney's Office
     99 NE 4 Street
     Miami, FL 33132
     Phone: 305-961-9117
     Fax: 305-530-7941

     Patrick Jasperse
     United States Department of Justice
     P.O. Box 386
     Washington, DC 20044
     Phone: 202-616-0509
     Fax: 202-514-8742